Jennifer P. Nore (#004951)
Gregory J. Marshall (#019886)
John M. DeStefano III (#025440)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren
Phoenix, AZ 85004-2202
Telephone: (602) 382-6000
Attorneys for Defendants Mortgage Electronic Registration
Systems, Inc. and Wells Fargo Bank, N.A.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AOM, Group, LLC, Trustee of Stemar Land Trust, Steven J. Von Prisk and Marisssa L. Von Prisk, beneficiaries,<br><br>Plaintiff,<br><br>vs.<br><br>Provident Funding Associates, LP, First American Title Company, Trustee, Mortgage Electronic Registration Systems, Inc, Mark S. Bosco, Wells Fargo Bank, NA, Michael A. Bosco, Jr., its assignees and/or successors-in-interest and Does 1-40,<br><br>Defendants. | No. CV 10-00605-PHX-MHM<br><br>**DEFENDANT WELLS FARGO BANK, N.A.'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS AND AWARD OF ATTORNEYS' FEES** |

Pursuant to Rule 54(d), Fed R. Civ. P., and LRCiv 54.2, Defendant Wells Fargo Bank, N.A. ("Wells Fargo")[1] files its Memorandum in support of its Motion for Sanctions and Award of Attorneys' Fees (Doc. # 38) ("the Motion"), which Wells Fargo filed on September 8, 2010. Based on the information provided below, and the supporting documentation submitted herewith as required by LRCiv 54.2(d), Wells Fargo, as the successful party, seeks to recover the total amount of $22,993.50 for its attorneys' fees. Pursuant to LRCiv 54.2(d)(1), a separate statement of counsel is attached hereto (as

---

[1] Though the initial Motion for fees was filed on behalf of Wells Fargo and Mortgage Electronic Registration Systems, Inc., only Defendant Wells Fargo proceeds with this motion.

Exhibit A) certifying the efforts made by undersigned counsel to resolve all disputed issues relating to Wells Fargo's motion for attorneys' fees.

## I.   FACTUAL BACKGROUND

Plaintiff AOM Group is an Arizona LLC that purports to serve as trustee of various evocatively named land trusts established by borrowers who have defaulted under their home mortgages.  In its capacity as trustee, AOM Group takes various measures to cloud title, obstruct eviction, and delay foreclosure of the borrowers' residences.  One of these tactics is to file a lawsuit against the foreclosing lender.  As Judge Martone has observed, "It appears that [AOM Group's] business model involves disseminating canned legal theories, engaging in shell games with lenders, and holding out false hope to desperate homeowners."  *AOM Group, LLC v. Wachovia Mortgage, FSB*, No. 10-CV-545-PHX-FJM, Doc. # 36, at 3.  This lawsuit is not unique.  AOM Group has filed a host of similar actions against these and other defendants alleging nearly identical causes of action in each one.[2]

### A.   AOM Group's Obstructionist Strategy

These cases generally follow the same pattern.  First, borrowers in default on their home loan convey the property to AOM Group and establish a trust, of which AOM Group is the trustee and the borrowers are the beneficiaries.  In some cases, AOM Group is also a beneficiary of the trust.  The conveyance to the trust may or may not be recorded. Frequently, as here, the borrowers record a quitclaim deed purporting to cancel their

---

[2] Such cases in this district include the following: *AOM Group, LLC v. Citimortgage, Inc.*, No. 10-CV-88-GMS (removed January 14, 2010); *AOM Group LLC v. Countrywide Home Loans*, No. 10-CV-514-GMS (removed March 5, 2010); *AOM Group, LLC v. DHI Mortgage Co.*, No. 10-CV-208-GMS (D. Ariz.) (removed January 29, 2010), *AOM Group v. Coastal Capital Corp.*, No. 10-CV-94-SRB (D. Ariz.) (removed January 15, 2010); *AOM Group , LLC v. MortgageIt, Inc.*, No. 09-CV-2639-SRB (D. Ariz.) (removed December 18, 2009); *AOM Group, LLC v. Countrywide Bank FSB*, No. 10-CV-597-GMS (removed March 17, 2010); *AOM Group, LLC v. Irwin Mortgage Corporation*, No. 10-CV-527-MHM (removed March 8, 2010); *AOM Group, LLC v. Wachovia Mortgage*, No. 10-CV-545-FJM (removed March 10, 2010); *AOM Group, LLC v. Wells Fargo Bank, N.A.*, No. 10-CV-553-MHM (removed March 11, 2010); *AOM Group, LLC v. Wells Fargo Bank, N.A.*, No. 10-CV-605-LOA (removed March 18, 2010); *AOM Group v. Wells Fargo Bank, N.A.*, No. 10-CV-528-MHM (removed March 8, 2010).

1 lender's deed of trust, with one of AOM Group's members signing on the borrowers'
2 behalf by way of a power of attorney. Ex. F.

3     Often, the property is later sold at a lawful trustee's sale before AOM takes further
4 action. In this case, before any sale occurred, a member of AOM Group also recorded a
5 "Notice of Substitution of Trustee and Deed of Release and Reconveyance" or similar
6 document purportedly releasing the borrowers from their loan obligations and conveying
7 the property back to them. Ex. G. The parties signing this deed purport to act with a
8 power of attorney on behalf of whatever bank is the current beneficiary of the trust.
9 Examples of such fraudulent quitclaim deeds and mortgage releases from this case and
10 others are attached as Exhibit D. This Court has noted that AOM Group's practice of
11 creating and recording these documents "appears fraudulent." *AOM Group v. Wells*
12 *Fargo Bank, N.A.*, No. CV-10-528-PHX-MHM, doc. # 36, at 3.

13     AOM Group will then file suit against numerous parties, generally including the
14 servicer, the beneficiary of the loan, other lending intermediaries, the loan originator, the
15 original trustee under the deed of trust, the substitute trustee under the deed of trust, and
16 others. As in AOM Group's other actions, the First Amended Complaint alleged that
17 various foreclosure activities were "a nullity and void" for spurious reasons. FAC ¶¶ 13,
18 16, 18-26. These include a supposed failure to assign the loan to the beneficiary, the
19 converse and inconsistent principle that an assignment destroyed the security interest, the
20 bank's alleged lack of authority to appoint the substitute trustee, an alleged lack of notice
21 to the beneficiary of the trustee's sale, alleged defects in the statutory sale procedure, and
22 the exercise of rescission rights under the Truth in Lending Act.[3]

23     AOM Group will also load the Complaint with a laundry list of other statutory and
24 common law claims without any factual allegations to support them. These allegations
25 are virtually identical from one complaint to the next. Observing that eleven (11)
26 different AOM Group cases had found their way to the district court's docket, this Court

---

[3] In this case, as in some others, AOM Group attempted to thwart the jurisdiction of this Court by amending the Complaint to exclude federal causes of action. This Court rejected AOM Group's request for leave to amend because AOM Group lacked standing to pursue its claims, and amendment would have been futile. Doc. # 36.

1    has found as follows: "It appears, after reviewing the pleadings in this case and other
2    cases that the AOM Group operates as nothing more than a complex ruse designed to
3    frustrate and delay otherwise lawful non-judicial foreclosures in the State of Arizona."
4    *AOM Group v. Wells Fargo Bank, N.A.*, No. CV-10-528-PHX-MHM, doc. # 36, at 2 n.1.

5    　　　　AOM Group maintains a website through a related entity called Arizona
6    Foreclosure Assistance, located at www.azforeclosureassistance.com.  According to
7    publicly recorded documents, AOM Holdings LLC is a manager/member of both AOM
8    Group LLC and Arizona Foreclosure Assistance LLC.  In the past, this website advertised
9    various options to assist borrowers who seek to avoid foreclosure, including litigation
10   (with no articulated substantive basis) designed to keep borrowers in their home without
11   making mortgage payments for 12-24 months.  *See* Ex. E hereto.  Litigation is no longer
12   advertised on the website, but it was at the time this suit was filed and prosecuted.

13   　　　　With reference to AOM Group, Judge Martone has observed that it "certainly
14   would be unethical for any lawyer to undertake litigation" for the purpose of "using the
15   delay inherent in litigation to keep possession." *AOM Group, LLC v. Wachovia*
16   *Mortgage, FSB*, No. 10-CV-545-PHX-FJM, Doc. # 24, TRO Hearing Tr. at 26-27
17   (Mar. 25, 2010).  Judge Martone has also admonished AOM Group's counsel to "take a
18   hard look at this case to see whether or not this case bears the weight of that kind of
19   litigation or whether instead it is simply a ploy to buy time for the so-called beneficiaries
20   of this mythical trust plaintiff, and also consider the potential Rule 11 implications of
21   litigation of this sort." *AOM Group, LLC v. Wachovia Mortgage, FSB*, No. 10-CV-545-
22   PHX-FJM, Doc. # 24, at 31.

23   　　　　AOM Group is presently the subject of an ongoing investigation by the Department
24   of Justice, which has moved this Court to enforce a civil subpoena aimed at AOM
25   Group's business records.  *United States v. AOM Group*, No. 10-MC-00079-PHX-JAT,
26   doc. # 2.  Judge Bolton has also imposed sanctions upon AOM Group and its counsel for
27   prosecuting serial anti-foreclosure lawsuits despite a *res judicata* bar.  *AOM Group LLC v.*
28   *Coastal Capital Corp.*, No. 10-CV-00094-PHX-SRB, doc. # 32, at 11.  As of July 29,

1  2010, the Arizona legislature has specifically prohibited any person from collecting an up-
2  front fee for the sort of "foreclosure consulting" service that AOM Group purports to
3  provide. *See* A.R.S. §§ 44-1378 to 44-1378.08.

### B. Litigation in the District Court

AOM Group recorded fraudulent releases or cancellations of the mortgage at issue in October 2009. *See* Ex. F, G. AOM Group filed this lawsuit on February 11, 2010 and amended its Complaint on February 17. AOM Group appears to have filed these claims without any reasonable inquiry into the facts and circumstances of the individual borrowers. For example, both the original Complaint and the Amended Complaint alleged in paragraph 51 of each pleading that Von Prisk "paid each and every payment on time from the time of the loan closing through the present." Wells Fargo's notice of default to Von Prisk and the publicly recorded and notarized Notice of Trustee's Sale (stating that Von Prisk's debt had been accelerated pursuant to the terms of the deed of trust) display the recklessness of AOM Group's pleading practices. *See* Exs. H, I hereto. AOM Group presented no reasonable, factual basis for holding any belief that Von Prisk had not defaulted on his obligations.

Finally, AOM Group never alleged any facts to suggest that it had standing to pursue these claims against Wells Fargo. This glaring, fundamental flaw—put into sharp relief by the dubious nature of AOM Group's allegations and practices—led the Court to dismiss AOM Group's First Amended Complaint. (Doc. # 36.)

AOM Group's abuses did not end with the filing of the various Complaints. AOM Group also moved to remand the case on the asserted ground that this Court lacked subject matter jurisdiction. Denying such a request in a parallel action, this Court reminded AOM Group of its Rule 11 obligations. *AOM Group v. Wells Fargo Bank, N.A.*, CV-10-553-PHX-MHM, Doc. # 20, at 3 (Mar. 26, 2010). Nonetheless, AOM Group continued to argue in this case that it had standing to proceed against all Defendants, including the nondiverse Bosco Defendants. (Doc. # 30, Apr. 8, 2010).

1  After subjecting Wells Fargo to the expense of investigating, removing, and
2  defending this suit, AOM Group and its counsel made empty gestures of remediation. On
3  April 14, 2010, in a parallel action, AOM Group filed a Response to Wells Fargo Bank,
4  NA's Motion to Dismiss, attaching several documents marked "Rescission of Full
5  Reconveyance," including one related to the property at issue in this case. *AOM Group v.*
6  *Wells Fargo Bank, N.A.*, No. CV-10-528-PHX-MHM, doc. # 25-1, at 13. AOM Group
7  also extended one settlement offer on May 21, 2010, offering to dismiss the Complaint
8  with prejudice if each party would bear its own costs and fees. By this point, Wells Fargo
9  had incurred approximately $21,917.50 in fees having fully briefed the pending issues in
10 this Court in this and other cases, and was on the brink of receiving this Court's order
11 dismissing AOM Group's claims against it.

## II. WELLS FARGO SHOULD RECOVER ITS ATTORNEYS' FEES UNDER A.R.S. § 12-341.01(A)

14  As set forth in the Motion, Wells Fargo is eligible to recover its attorneys' fees
15 pursuant to this Court's Order dated August 25, 2010 (Dkt. # 36) (dismissing First
16 Amended Complaint) and A.R.S. § 12-341.01(A), which provides in pertinent part: "In
17 any contested action arising out of a contract, express or implied, the court may award the
18 successful party reasonable attorney fees." AOM Group alleged numerous theories of
19 liability arising out of the Von Prisks' contractual loan documents, seeking to invalidate
20 Wells Fargo's security interest in the Von Prisks' house. Generally, AOM Group claimed
21 that the loan documents were invalid, that the loan transaction was invalid, and that the
22 Wells Fargo had breached certain obligations arising out of the loan transaction which
23 rendered it liable to AOM Group. Thus, all of these claims arose out of the Von Prisks'
24 mortgage contract with Wells Fargo. The Court dismissed the Complaint in its entirety on
25 August 25, 2010. Wells Fargo is therefore the successful party in this action.

### A. Wells Fargo Should Be Awarded Its Attorneys' Fees

The Arizona Supreme Court has held that, in determining whether to award the successful party reasonable attorneys' fees (and in what amount) pursuant to A.R.S. § 12-341.01(A), the trial court should consider the following factors:

1. Whether the unsuccessful party's claim or defense was meritorious;

2. Whether the litigation could have been avoided or settled and the successful parties' efforts were completely superfluous in achieving the result;

3. Whether assessing fees against the unsuccessful party would cause an extreme hardship;

4. Whether the successful party prevailed with respect to all of the relief sought;

5. Whether the legal question presented was novel and whether such claim or defense has previously been adjudicated in this jurisdiction; and

6. Whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate contract issues for fear of incurring substantial amounts of attorneys' fees.

*Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985). As discussed below, the foregoing factors weigh strongly in favor of awarding Wells Fargo the full amount of its requested attorneys' fees.

### B. AOM Group's Claims Were Not Meritorious

None of AOM Group's claims were meritorious. As this Court explained in its order of dismissal (doc. # 36) AOM Group lacked any standing to pursue them. Hence, this Court granted Wells Fargo's Motion to Dismiss AOM Group's Complaint in its entirety.

### C. Wells Fargo's Efforts Were Not Superfluous and the Litigation Could Not Have Been Avoided

Wells Fargo removed this case and opposed remand in an effort to curtail protracted litigation over meritless claims. The proceedings required substantial effort on the part of counsel, owing to the calculated sprawl of AOM Group's claims and arguments respecting remand. The substantial effort of Wells Fargo's counsel was

justified in the interest of warding off further jurisdictional games and much greater discovery, hearing, and trial expenses that would attend this frivolous case if it were permitted to move past the dismissal stage.

AOM Group's May 21, 2010 settlement offer does not alter this conclusion. By the time that offer of dismissal was made, Wells Fargo had expended $21,917.50 in fees. The settlement offer did not represent a reasonable conclusion of the litigation under the circumstances. By depriving Wells Fargo of its claim for attorney fees, this offer would only serve to perfect AOM Group's illegitimate interests, enabling AOM Group to beat a hasty and consequence-free retreat after the bad-faith infliction of costly, time-consuming litigation designed solely to delay and obstruct foreclosure.

Nor can AOM Group find shelter in its purported rescission of the fraudulent releases. Those documents could not erase the cloud on title that AOM Group deliberately created at the time suit was filed. Moreover, these "rescissions" do not purport to correct AOM Group's fraudulent Substitution of Trustee (ex. # G), and they do not address the recorded Quit Claim Deed by which AOM Group attempted to "cancel" the deed of trust and cloud title in this case (ex. F).

### D. Whether Assessing Fees Against AOM Group Would Cause Extreme Hardship

There is nothing in the record to suggest that assessing attorneys' fees against AOM Group would cause "extreme hardship." This lawsuit was filed as part of an illegitimate scheme to obstruct foreclosure and peddle false hope to desperate homeowners. In the face of such inequitable conduct, this factor weighs strongly in favor of Wells Fargo.

### E. Wells Fargo Prevailed With Respect to All of the Relief Sought

Wells Fargo prevailed on all of AOM Group's claims. Accordingly, this factor weighs in favor of Wells Fargo.

### F. The Legal Questions Presented Were Not Novel

Although AOM Group's Complaint contained a panoply of legal claims, including confusing and false statements of fact and law, the claims did not present unique or novel legal issues. Ample prior authority showed that AOM Group's "show-me-the-note" argument, and its attack on the foreclosure process, had no likelihood of success, and that AOM Group itself lacked standing to proceed. Accordingly, this factor weighs in favor of Wells Fargo.

### G. An Award of Fees Will Not Discourage Parties With Meritorious Claims From Litigating Legitimate Contract Claims

To award fees in this instance will have no chilling effect upon colorable suits, because AOM Group's pleadings show that this suit lacked any reasonable basis in fact or law from the beginning. Other plaintiffs with a colorable basis to proceed in court would have nothing to fear from the award in this case, which serves only to deter unfounded, meritless suits brought by the wrong party for improper purposes. This factor weighs in favor of Wells Fargo.

## III. WELLS FARGO IS ENTITLED TO AN AWARD OF ATTORNEYS' FEES AS A SANCTION PURSUANT TO RULE 11 AND THIS COURT'S INHERENT POWERS

### A. Sanctioning Standards

Rule 11(b), Fed. R. Civ. P., provides in part that:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*: (1) it is not being presented *for any improper purpose . . .* ; (2) the claims, defenses, and other legal contentions *are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing of new law . . . .*

(emphasis added). If a court determines that a party, and/or its counsel, has violated Rule 11(b), the "court may impose an appropriate sanction." Fed. R. Civ. P. 11(c)(1). In fact, a court "[o]n its own" has the discretion to "order an attorney, law firm, or party to

- 9 -

show cause why conduct … has not violated Rule 11(b)." *Id.* at (c)(3); *see also Estate of Gianna Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997). In addition to the authority of Rule 11, "[a]ll federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders." *Aloe Vera of Am. v. United States*, 376 F.3d 960, 964-65 (9th Cir. 2004); *see also Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991) (holding that dismissal and assessment of attorneys' fees is within the discretion of the court by means of its inherent power regardless whether the conduct could also be sanctioned under a statute or rule). The use of inherent powers is particularly appropriate where, in the Court's discretion, "neither the statute nor the Rules are up to the task." *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732 (9th Cir. 1995).

### B. Sanctions are Warranted in This Case

Sanctions are warranted under the facts and circumstances of this case under Rule 11 and this Court's inherent power. As discussed above and in the Motion to Dismiss, a reasonable investigation by AOM Group—whether of this Court's docket or the law applicable to its claims—would have revealed that none of the claims were supportable, legally or factually. At the most basic level, AOM Group could not reasonably expect that the creation of a fictitious trust would endow it with standing to proceed with reference to the Von Prisks' activities and property interests. The substantive claims alleged are contradicted by obvious facts, such as the notices of default. Moreover, AOM Group's choice to record fraudulent mortgage releases in the public record and then file a Complaint seeking to quiet title in the borrowers demonstrates an egregious and willful disregard of the integrity of the local public land records, and ethical rules.

In sum, AOM Group filed the Complaint for one purpose only: to subject opposing parties to undue burden and expense and to use the delay inherent in litigation as a form of extortion. Its litigation actions are not just an abuse of the judicial system and a waste of resources—they are an abuse founded upon affirmative deception. That

1  deception appears in the establishment of numerous sham entities, the horde of identical
2  actions filed, the recordation of fraudulent releases in the public record bearing on AOM
3  Group's quiet title action, and counsel's attempt to elude the responsibilities of any
4  attorney-client relationship with the Von Prisks.

5  While many anti-foreclosure suits which border on the frivolous have been
6  presented to the Arizona District Courts on motions to dismiss, many of which have been
7  filed by unsophisticated and *pro per* parties, Attorney Clark and AOM Group have
8  distinguished themselves by their deceitful and apparently profitable misuse of land
9  records and the judicial apparatus. This behavior provides a ready basis for fees under
10 Rule 11 or the Court's inherent powers, both against Attorney Clark and AOM Group.
11 The requested award of attorney fees is the minimum sufficient to redress and deter such
12 conduct.

### IV. THE REQUESTED FEE AWARD IS REASONABLE

14 A "reasonable fee" includes that which "would have been undertaken by a
15 reasonable and prudent lawyer to advance or protect his client's interest." *Schweiger v.*
16 *China Doll Rest., Inc.*, 138 Ariz. 183, 188, 673 P.2d 927, 932 (App. 1983). Some of the
17 factors to be considered in determining what is a reasonable fee include: (1) the qualities
18 of the advocate (skill and ability, experience, and professional standing); (2) the character
19 of the work, including its difficulty and importance; (3) the work actually performed, and
20 the skill, time and attention given to the work; and (4) the result. *Id.* at 187, 673 P.2d at
21 931; *see also* LRCiv 54.1(c)(3) (identifying same factors as "bearing on reasonableness of
22 requested attorneys' fee award"). The best indication of what a reasonable rate is under
23 the circumstances of a particular case is the rate agreed to by the client and the lawyer.
24 *China Doll*, 138 Ariz. at 187, 673 P.2d at 931.

#### A. The Time and Labor Expended of Counsel Was Reasonable

26 Counsel for Wells Fargo incurred a total of approximately 52.7 hours in
27 connection with this action, resulting in fees billed to Wells Fargo of $20,818.50. *See*
28 Declaration of Counsel, Exhibit B; Task-Based Itemized Statement of Fees and Expenses

1  (the "Itemized Statement"), Exhibit C hereto.  In addition, paraprofessionals incurred a
2  total of approximately 8.4 hours, resulting in fees billed to Wells Fargo of $1,680.[4]  *Id.*
3  Wells Fargo has either paid or agreed to pay these fees to Snell & Wilmer, LLP ("Snell &
4  Wilmer"), pursuant to its agreement to pay Snell & Wilmer on an hourly basis for the
5  services reasonably performed.  *See* Declaration of Counsel, Ex. B at ¶¶ 3-11.

6  As already explained, the legal work performed by Wells Fargo's counsel was
7  necessary and critical to Wells Fargo's prevailing in this action.  The number of hours
8  expended by counsel was reasonable, as they were incurred in performing services that
9  "would have been undertaken by a reasonable and prudent lawyer to advance or protect
10 his client's interest in the pursuit" of the case.  *China Doll*, 138 Ariz. at 188, 673 P.2d at
11 933.

**B.     The Billing Rates Were Reasonable and Customary**

The billing rates charged by Snell & Wilmer to Wells Fargo in this action were reasonable.  The hourly rates charged reflected customary billing rates charged by Snell & Wilmer during the relevant time periods for the attorneys and clients involved.  Those rates are similar to or lower than rates charged by other law firms in Phoenix for the same type of work.  *See* Declaration of Counsel, Ex. B at ¶¶ 3-11.

**C.     Wells Fargo Was Represented by Experienced, Reputable and Able Counsel**

The attorneys representing Wells Fargo in this lawsuit practice in the area of financial services litigation.  Gregory Marshall is a partner at Snell & Wilmer who has practiced law in Phoenix, Arizona for more than 12 years and has focused his practice in the area of financial services litigation.  Ex. J.  Jennifer P. Nore is a partner at Snell & Wilmer with over thirty years' experience in complex commercial litigation and extensive experience in real estate and foreclosure litigation.  Ex. K.  Amanda Sheridan is a first-year associate at Snell & Wilmer with experience in consumer credit litigation.  Ex. L.

---

[4] "Reasonable fees" include fees not only for attorneys' services, but also for the services of legal assistants, including paralegals and law clerks.  *Continental Townhouses E. Unit One Ass'n v. Brockbank,* 152 Ariz. 537, 544, 733 P.2d 1120, 1127 (App. 1986).

- 12 -

1  John M. DeStefano III joined the firm in 2009 after clerking in the federal judiciary for
2  two years.  At Snell & Wilmer, he has appeared and assisted in dozens of foreclosure-
3  related actions and has coordinated the successful defense of several lawsuits filed by
4  AOM Group.  Ex. M.

5  As to paraprofessional credentials, Patricia Dooley, a litigation paralegal in Snell &
6  Wilmer's Phoenix office, works regularly with members of the firm's financial
7  institutions litigation subgroup in a litigation support role.  Paralegal fees are properly
8  considered as a component of an award of attorney fees under A.R.S. § 12-341.01.
9  *Continental Townhouses E. Unit One Ass'n v. Brockbank,* 152 Ariz. 537, 544, 733 P.2d
10 1120, 1127 (App. 1986).

### D. The Amount At Issue Was Significant, and Wells Fargo's Counsel Obtained a Favorable Result

As a result of the work performed by Snell & Wilmer, Wells Fargo obtained an order dismissing a complaint that requested, among other claims, rescission of promissory notes and deeds of trust, in addition to damages.  Under any test, the successful defense of this action was extremely favorable to Wells Fargo.

### E. Legal Research Expenses are Recoverable as a Component of Attorney Fees

While many costs cannot generally be included in an attorney fee award under A.R.S. § 12-341.01, the successful party is "entitled to recoup the costs of computerized legal research."  *In re MCW Brickyard Commercial, LLC*, No. CV 04-2024 PHX-SRB, 2005 WL 3307351, at *3 (D. Ariz. 2005).  Therefore, Wells Fargo is entitled to recover the $495.00 in computerized legal research costs incurred in this case.

### V. CONCLUSION

Based upon the foregoing, Wells Fargo requests that the Court award it a total of $22,993.50 for its attorneys' fees.[5]

---

[5] This amount represents the $22,993.50 in attorneys' fees, paraprofessional fees, and research expenses set forth in the Itemized Statement at Exhibit C.

DATED this 25th day of October, 2010.

SNELL & WILMER, L.L.P.

By: *s/ John M. DeStefano III*
Jennifer P. Nore
Gregory J. Marshall
John M. DeStefano III
One Arizona Center
400 E. Van Buren St.
Phoenix, Arizona 85004-2202
Attorneys for Defendants Mortgage Electronic
Registration Systems, Inc. and Wells Fargo Bank, N.A.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of October, 2010, I electronically transmitted the foregoing document and any attachments to the U.S. District Court Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Richard E. Clark, Esq.
General Counsel
AOM Group, LLC
2942 N. 24th St., Suite 109
Phoenix, AZ 85016
richardc@theaomgroup.com
Attorney for Plaintiffs

Leonard J. McDonald Jr., Esq.
William Morris Fischbach III, Esq.
Tiffany & Bosco P.A.
2525 E. Camelback Rd., 3rd Floor
Phoenix, AZ 85016
ljm@tblaw.com
wmf@tblaw.com
Attorneys for Defendants Mark S. Bosco,
  Michael A. Bosco, Jr., and Provident
  Funding Associates, LP

I also certify that on the 25th day of October, 2010, I transmitted a courtesy copy of the foregoing document and any attachments by hand delivery to:

Honorable Mary H. Murguia
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 525
401 W. Washington St., SPC 53
Phoenix, AZ  85003-2154

*s/ John M. DeStefano III*

12112950

- 14 -